APPEAL OF C. TREVOR DUNHAM, INC.

Docket No. 5654.   Decided October 30, 1926.

A corporation which conducted an insurance agency and financed, partly with its own funds and partly with funds of a trust company, the purchase of automobiles upon which it wrote insurance, is not within section 303, Revenue Act 1918.

*F. W. McReynolds, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the Commissioner.

Deficiencies of $3,052.49 and $7,433.61 income and profits taxes for the calendar years 1919 and 1920, respectively, arising in part from the refusal of the Commissioner to grant partial personal service classification under section 303 of the Revenue Act of 1918.

FINDINGS OF FACT.

The petitioner is a Delaware corporation with its principal place of business at 246 North Broad Street, Philadelphia, Pa. It conducted an insurance agency business, financed automobile sales on its own account, and acted as agent in the financing of automobile sales with funds of the First Peoples Trust Co., of Boston, Mass.

The corporation was organized primarily for the purpose of taking over and increasing the insurance agency business originally conducted by C. Trevor Dunham personally. It was desired to build up good will among his insurance clients and only those who had insurance with him were invited to invest money. It was desired to eliminate competition to the extent that those having an investment in the company would place their own insurance with the company and influence the business of their friends.

Of a total capital stock of $39,832.15 outstanding as of January 1, 1919, $33,387.50 was held as follows:

| | |
|---|---|
| C. T. Dunham | $24,447.50 |
| H. Freeman | 6,000.00 |
| G. C. Krick | 1,000.00 |
| H. W. Kunzig | 30.00 |
| R. T. Martin | 410.00 |
| F. White | 1,500.00 |

Of a total capital stock of $60,552.50 outstanding as of January 1, 1920, $48,832.50 was held as follows:

| | |
|---|---|
| C. T. Dunham | $26,662.50 |
| H. Freeman | 2,000.00 |
| G. C. Krick | 1,900.00 |
| H. W. Kunzig | 180.00 |
| R. T. Martin | 1,000.00 |
| F. White | 4,500.00 |
| R. Lever | 1,300.00 |

| | |
|---|---|
| P. Schlosser | $2,000.00 |
| G. S. Myers | 400.00 |
| B. B. Davis | 2,500.00 |
| J. W. Hempler | 1,000.00 |
| E. Pilkington | 490.00 |
| A. Miller | 1,450.00 |
| C. G. Spitz | 450.00 |
| G. Waterhouse | 1,000.00 |
| E. G. Sproules | 500.00 |
| J. S. Vertner | 500.00 |
| J. P. Enbank | 500.00 |
| W. P. Lurker | 500.00 |

C. Trevor Dunham was the treasurer and general manager of the company. H. W. Kunzig was the secretary of the company. Both devoted their entire time to and were actively engaged in the conduct of the business.

Dunham and Kunzig were the only stockholders who drew salaries.

The other stockholders listed above were engaged in other businesses and professions. They placed their own insurance with the company, recommended the company to their friends, and when they learned of persons who were prospects for insurance, reported the fact to Dunham or Kunzig, who would endeavor to secure the insurance. Occasionally these stockholders would accompany Dunham or Kunzig to the prospects so secured and assist them in the active solicitation of the insurance. A majority of the calls made by Dunham and Kunzig were by appointment with prospective customer friends of the stockholders.

The stockholders received no compensation for their services other than the return on their investment in the company.

The corporation paid 10 per cent dividends on its stock in 1919 and 1920.

Originally the petitioner was principally concerned with the securing of insurance, mainly on automobiles. It was found, however, that occasionally certain insurance could not be written unless the company would finance the purchase of the automobile on which the insurance was to be written. While the petitioner did not solicit this type of business during the years involved in this appeal, it accepted it as it presented itself and it steadily increased in volume.

Fire, theft and casualty insurance was required by the petitioner to be placed with it in all transactions involving the financing of the purchase of automobiles, and in the majority of cases liability and property insurance were also required. This was exacted solely to build up the company's insurance business. Occasionally a customer would take out insurance in excess of these requirements.

The demand upon the petitioner for funds with which to finance such transactions increased to such an extent that, foreseeing the possi-

bility of greatly increasing its insurance business, it made arrangements in January of 1920 with the First Peoples Trust Co., of Boston, Mass., to provide such funds. The trust company dealt only with Dunham and he acted as its agent in investing the funds. For this service the trust company paid a 2 per cent commission on all disbursements. This commission was turned over by Dunham to the petitioner, which collected all loans for the trust company as they became due and paid all expenses in connection with the financing transactions, retaining the profits for itself. The First Peoples Trust Co. was responsible for and assumed all losses from bad loans.

During 1920 the commissions received from the First Peoples Trust Co. amounted to $56,582.04.

During the years 1919 and 1920 there was income in an undetermined amount from miscellaneous insurance—fire, burglary, liability, property damage, etc., not connected with automobiles.

The petitioner allocated the expenses between an assumed personal service part of the business and an assumed non-personal service part in proportion to an assumed gross income received from those parts, with the exception of commissions paid for insurance, which were charged directly to the so-called personal service part, and bad debts on leases, which were charged against the non-personal service part. Separate books were not kept for the two different classes of business.

The petitioner's business required the extension of credit to its insurance customers. In a great majority of cases it paid its insurance agencies before it received the money from its customers. The investment of capital with it by its stockholders enabled it to handle larger and bigger accounts.

C. Trevor Dunham was a notary public during the years involved. The fees received by him were turned in to the corporation. In 1919 these fees amounted to $1,543.26. In 1920 they were $1,579.58. In both years the petitioner included these amounts in its income.

OPINION.

STERNHAGEN: The petitioner seeks to prove itself within section 303, Revenue Act of 1918, which is as follows:

That if part of the net income of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total net income) is derived from a separate trade or business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of " personal service corporations," then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such net income shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the

tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part: *Provided*, That the tax upon such second part shall in no case be less than 20 per centum thereof, unless the tax upon the entire net income, if computed without benefit of this section, would constitute less than 20 per centum of such entire net income, in which event the tax shall be determined upon the entire net income, without reference to this section, as other taxes are determined under this title. The total tax computed under this section shall be subject to the limitations provided in section 302.

The evidence indicates clearly enough that the activities of petitioner are so closely related one to the other and each to the whole that there is neither a separate trade or business nor a distinctly separate branch of the trade or business. As an automobile insurance agent it found a means of increasing its business by financing the purchase of the automobiles upon which it negotiated insurance, and as a further step in this financing it arranged to place loans for the trust company. No one of these was distinct. The costs of the entire business were undividedly applicable to all and the attempt of petitioner's accounting representative to segregate and allocate expenses was not satisfactory. The entire personnel of the business was, so far as the evidence shows, devoted to all its activities, and the only clearly separate factor was the commissions received from the trust company.

*Judgment will be entered for the Commissioner.*